## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN M. FLOYD & ASSOCIATES,   :          Hon. Joseph H. Rodriguez
INC., a Texas Corporation,       :
                                         :
             Plaintiff(s),       :          Civil Action No. 03-1473
                                         :
          v.                    :
                                         :                **OPINION**
OCEAN CITY HOME BANK, a New   :
Jersey savings bank,           :
                                         :
            Defendant(s).      :

RODRIGUEZ, Senior District Judge:

This matter comes before the Court on post-trial motions by both parties. Ocean City Home Savings Bank ("Defendant" or the "Bank") renews its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Alternatively, the Bank moves for a new trial or remittitur pursuant to Rule 59. Also before the court is a motion by John M. Floyd & Associates ("Plaintiff" or "JMFA") to alter or amend the judgment entered in its favor in this case. For the reasons expressed below, the Court denies the Bank's motions and grants JMFA's motion.

## I. BACKGROUND

The underlying dispute in this case flows from the parties' obligations under the terms of the Engagement (the "Contract"). Under the terms of the Contract, JMFA was to

analyze the Bank's current computer systems and make recommendations to create, install, and implement an overdraft privilege program.  (See the Contract, Def.'s Exh. C.) Earl Shipp ("Shipp") was assigned by JMFA to be the project manager for the Contract. (See Shipp Dep. at 11.)  On November 27, 2001, Shipp presented thirty-two recommendations to several of the Bank's officers, including Paul Esposito ("Esposito"), Regional Sales Director.  (See Def.'s Exh. G.)  In a December 19, 2001 phone conversation, and followed by a letter dated December 24, 2001, Esposito advised JMFA that the Bank had decided not to implement the proposed overdraft program.  (Pl.'s Exh. G.)  The Bank then contacted Pinnacle Financial Strategies, L.L.C. ("Pinnacle") on January 2, 2002 to implement a similar overdraft privilege program.  (Esposito Dep. at 193.)

The relevant procedural history began when JMFA filed suit against the Bank to collect damages for the Bank's alleged breach of contract and violation of the implied covenant of good faith and fair dealing.  This Court granted the Bank's motion for summary judgment with respect to both claims.  The Court of Appeals then reversed in part, stating that a genuine issue of material fact remained as to the breach of contract claim.   Pursuant to the Third Circuit's directive, trial was held to determine which, if any, recommendations from JMFA were implemented by the Bank.[1]  The burden was placed

---

[1]Specifically, the Third Circuit stated:

JMFA offers an expert report analyzing the Bank's financial statements which concluded that the Bank's increase in revenues was attributable to its adoption of

on JMFA to show that the implemented recommendations caused an increase in the Bank's revenues for the year following the implementation process.[2]  The jury found in favor of JMFA as to every element of the cause of action, and awarded damages in the amount of $106,927.78.

Defendant now renews its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  Primarily, Defendant challenges the testimony of Plaintiff's expert witness, James V. Long ("Long").  (See Def.'s Supp.'l Br., pp.10-16.) The Bank argues that Long's testimony should have been barred.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-94 (1993) (stating that trial courts must exclude experts using invalid reasoning and methodology).

---

recommendations proposed by JMFA.  That report, however, is not specific about exactly which of JMFA's recommendations the Bank implemented.  The Bank's expert did not appear to dispute that JMFA's recommendations were implemented by the Bank, but instead argued that most . . . were "canned" or "generic" . . . [or] already in place at the Bank.  Thus, we are left with a dispute of fact over whether or the extent to which the Bank implemented the specific recommendations that JMFA made to the Bank.

John M. Floyd & Associates, Inc. v. Ocean City Home Savings Bank, 2006 U.S. App. LEXIS 28583, *10 (3d Cir. Nov. 16, 2006).

[2]With respect to the fee calculation, the Contract stated in relevant part:

Quantification of Earnings
If a recommendation is not approved it will not be included in the fee calculation. However, if any recommendation, within 24 months of the initial engagement is approved or approved as modified, or initially declined and later approved as recommended or as subsequently modified it will be included in the fee calculation.

(See Contract, p.2.)

Citing Federal Rules of Evidence 702 and 703, Defendant argues that Long's testimony was inadmissible, as it was based entirely on speculation and unfounded assumptions. (Id. at 17.) Without this testimony, Defendant claims Plaintiff would have been unable to prove damages, and therefore Defendant should be entitled to judgment as a matter of law. (Id. at 20.) Alternatively, Defendant seeks a new trial for three reasons: (1) the verdict rendered was wholly against the weight of the evidence; (2) the verdict rendered was excessive; and (3) the court failed to adequately instruct the jury. (Id. at 20-23.)

Plaintiff answers that Defendant has waived any possible objections to Long's testimony by failing to object to the Pretrial Order, which outlined Long's proposed testimony. (Id. at 7.) Plaintiff argues that, in any event, Long's testimony was based on reliable accounting procedures, fully satisfying the Daubert standard. (See Pl.'s Initial Br. in Opp'n, pp.10-19.) Not only was there sufficient evidence and facts on the record for the jury to deliberate and properly decide the case, Plaintiff also claims that the jury instructions were proper and adequate. (See Pl.'s Supp.'l Br., pp.1-6.) As for damages, Plaintiff argues that the damages were not speculative or the result of guesswork.

Finally, Plaintiff's cross-motion to alter or amend the judgment, under Federal Rule of Civil Procedure 59(e), seeks costs and pre-judgment interest. Plaintiff cites Federal Rule of Civil Procedure 54(d)(1) in its argument for costs. With regard to pre-judgment interest, Plaintiff relies upon principles of equity established under New Jersey

-4-

precedent.  For the reasons expressed below, Defendant's motions are denied, and

Plaintiff's cross-motion for costs and pre-judgment interest is granted.

## II. DISCUSSION

### A.  Renewed Motion for Judgment as a Matter of Law

### 1.  Rule 50(b) Standard

Judgment as a matter of law may be granted post-verdict pursuant to Rule 50(b) of

the Federal Rules of Civil Procedure.   In accordance with Rule 50(a), judgment as a

matter of law may be granted where "there is no legally sufficient evidentiary basis for a

reasonable jury" to find in favor of the non-moving party.  Fed. R. Civ. P. 50(a).  Once

the Court denies or reserves judgment on the initial motion under Rule 50(a), the party

may renew its motion after the jury has returned a verdict.  Fed. R. Civ. P. 50(b).  The key

"question is not whether there is literally no evidence supporting the unsuccessful party,

but whether there is evidence upon which a reasonable jury could properly have found its

verdict."  Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003) (quoting Gomez v.

Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).  Thus, the Court must

determine whether, in light of the evidence viewed most favorably to the prevailing party,

a reasonable jury could have properly returned the verdict.  It is worth noting that Rule 50

motions are granted "sparingly".  Johnson, 332 F.3d at 204.  Such motions are granted

only where "the record is critically deficient of the minimum quantum of evidence" to

substantiate the verdict. Gomez, 71 F.3d at 1083.

### 2.  Admissibility of Expert Testimony

The District Court serves as a "gate keeper" to ensure the relevance and reliability

of expert testimony.  See In re Unisys Savings Plan Litigation, 173 F.3d 145, 155 (3d Cir.

1999) (citing General Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997)).  In this capacity, the

Court must first assess whether the reasoning or methodology employed by the expert is

valid, and then determine whether the reasoning can properly be applied to the facts at

issue.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-94 (1993).  Under the

Federal Rules of Evidence, experts shall be permitted to testify only if:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In short, the Court must focus only on "principles and methodology,

not on the conclusions that they generate."  Daubert, 509 U.S. at 580.  Under Fed. R.

Evid. 103, a party may waive the issue of admissibility of testimony by failing to *timely*

object to its admission.  See Benjamin v. Peter's Farm Condominium, 820 F.2d 640, 642-

43, n.5 (3d Cir. 1987) (emphasis added).  An objection is timely if it is made as soon as its

pertinency is apparent to the opponent. 1 WIGMORE, EVIDENCE § 796 (Tillers rev. 1983).

### 3.  Analysis

Defendant argues that Long's testimony should be stricken from the record

because it failed to satisfy the Court's standards for admissibility.  (Def. Supp.'l Br.,

p.18.)  Defendant further contends that, without Long's testimony, Plaintiff failed to

prove damages.  (Id.)  As a result, Defendant argues that it is entitled to judgment as a matter of law.  Plaintiff responds, *inter alia*, that not only has Defendant waived any possible objection to Long's testimony, but that Long's testimony was in fact properly admitted, supported, and relevant to the trial.  The Court agrees, and for the reasons expressed below, denies Defendant's motion.

It is well-settled that objections to expert testimony must be made in a timely manner, Benjamin v. Peter's Farm Condominium, 820 F.2d 640, 642-43, n.5 (3d Cir. 1987), or the objecting party is deemed to have waived its right to do so.  See Feliciano-Hill v. Principi, 439 F.3d 18, 24 (1st Cir. 2006) (reasoning that parties must make a timely objection in order to carefully evaluate the expert's proposed testimony); cf. Karam v. Sagemark Consulting, Inc., 383 F.3d 421, 427 (6th Cir. 2004) (acknowledging that "in the absence of a timely objection, such testimony is generally not considered to be erroneously admitted."); see also Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004) ("A Daubert objection not raised before trial may be rejected as untimely.").  Federal Rule of Evidence 103 states in relevant part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, *and [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears on the record, stating the specific ground for the objection*, if the specific ground was not apparent from the context.

Fed. R. Evid. 103(a)(1) (emphasis added).

In this case, Defendant waited over three years between the time the expert first

rendered his report and the time trial commenced to officially note its objection.

Defendant offers no explanation for the delay.  (See Def.'s Initial and Supp.'l Briefs.)

The Joint Final Pretrial Order is illustrative in this regard.  Defendant offers no objection

to any witness listed by Plaintiff,[3] or to the qualification of Long as an expert.  (Joint

Final Pretrial Order, p.9.)  As noted by the Third Circuit, "the pretrial order controls the

subsequent course of the trial unless modified to prevent manifest injustice."  Shell

Petroleum, Inc., v. U.S., 182 F.3d 212, 218 (3d Cir. 1999) (citing Fed. R. Civ. P. 16(e);

and Hassan v. Stafford, 472 F.2d 88, 95 (3d Cir. 1973)).  The pretrial order explicitly

states that

> Long "[was] expected to testify as a proposed expert consonant with his previously rendered report of October 21, 2004 in which he derived the amount due JMFA from the Bank from the Bank's financial documents, together with the methodology therefor."

(Joint Final Pretrial Order, p.9.)

During trial, Long did just that.  (See generally Long tr.)  The pretrial order also

directed that "[a]ny objection to a witness must be noted by opposing counsel and for

each such witness objected to, the name of the witness and the reason for the objection

shall be given."  (Id.)  In light of the fact that Defendant never noted a Daubert objection

to Long until trial, his expert testimony will not be stricken.  Defendant has waived this

argument due to lack of timely objection.

---

[3]In fact, the only objection noted by Defendant pertains to the proposed reading of the deposition testimony of Ketcha by Plaintiff into the record at trial.  (Joint Final Pretrial Order, p.9.)

Even if the Court reached the merits of Defendant's <u>Daubert</u> objection, the
argument fails. To qualify as an expert, the witness must "possess specialized expertise."
<u>See</u> <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 244 (3d Cir. 2008) (quoting <u>Schneider ex</u>
<u>rel. Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003)).   The proffered
testimony must "assist the trier of fact" with understanding either evidence or a fact in
issue.  Fed. R. Evid. 702.  As stated above, a witness may offer expert opinion if:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Here, Long possessed such expertise, and was qualified to present the relevant
damages calculations at trial.  (<u>See</u> Long's Credentials, attached to Pretrial Order.)  He
holds an advanced degree in professional accounting, has experience teaching accounting
at The University of Texas, and has worked as an auditor in the private sector.  (<u>Id.</u>)
Furthermore, Long has previously testified as an expert witness in banking and "related
matters".  (<u>Id.</u>)  In this case, Long's expert testimony was based on the Bank's own
income statements, undoubtedly a sufficient factual basis for Rule 703.  <u>See</u> Fed. R. Evid.
703.  The ultimate figure determined by Long– $106,927.98– resulted from elementary
arithmetic procedures of addition, subtraction, multiplication, and division.  (Long tr., pp.
11-21.)

Defendant also challenges Long's application of the principles and methods relied

on in calculating damages.  Defendant first argues that Long improperly calculated

damages by using "assumptions" not found on the income statements.  Defendant points

to Long's testimony to support this claim.  (See Def.'s Supp.'l Br., pp.7-16)  Long admits

that he attributes any unaccounted-for increase in income on the Bank's statements to the

implementation of a recommendation by Plaintiff.  (See Long tr., p.35, at lns. 8-14.)

Defendant suggests this methodology is imprecise and by consequence, unreliable.  Yet,

Long's assumptions were substantiated at trial by Esposito, Defendant's regional sales

director.  (Long tr. p.37, at lns. 9-17).  Esposito ruled out the possibility of increases in

income coming from anywhere but the newly implemented overdraft program.  (Id.)

Therefore, this ground does not afford Defendant relief.

Next, Defendant challenges Long's methodology by claiming that he improperly

calculated revenues related to ATM or debit cards.  (Def.'s Supp.'l Br., p.9.)  Defendant

relies upon Shipp's admission that he did not include any recommendations regarding

debit cards or ATM transactions in his overdraft proposal to the Bank. (See Shipp tr., pp.

39-40)  At trial, however, Long contradicted Shipp's testimony when he read aloud

Shipp's proposed introductory letter to the Bank's customers:

> [The] discretionary Overdraft Privilege will be shown in your available
> balance, it may be available to you at the *ATM* for cash withdrawals, and may
> also be available when you use your *Visa check card* for purchases at retail
> merchants.

(Long tr., p.44, lns. 19-23) (emphasis added).

This excerpt evinces a clear contemplation by Shipp that ATM transactions and debit

cards would be included in the overdraft privilege program.  At minimum, the letter, coupled with Long's testimony, put this issue in dispute.  The jury then weighed the evidence and, consistent with its role as the trier of fact, found in favor of Plaintiff. Therefore, this ground does not afford Defendant relief.

Defendant's third challenge of Long's methodology relates to his use of the savings accounts in his damages calculation.  (See Def.'s Supp.'l Br., p.9.)  The relevant colloquy of Defense counsel and Long goes as follows:

> Q. ...[D]id Mr. Shipp make any recommendations as to savings accounts?
> A. No, he did not.

(Long tr., p.30 at lns. 2-4.)

Because no recommendations were made, Defendant argues that Long's use of savings accounts in his calculations for damages was improper.  Defendant over looks the fact, however, that Long had to use the accounts in the calculations because of established accounting standards.  (Long tr., p.30 at ln. 19.)  Long explained at trial:

> I have to apply accounting standards, which include the same thing in the base that's in the computed numbers, and savings accounts are in one lump number in the period 2000 through 2001 ... I had no alternative, because if I'm going to compare an apple, I have to have an apple on the other side. It's an apples to apples comparison ...

(Long tr., pp.30-31.)

Thus, the use of savings accounts must be attributed to the Bank's book-keeping during the base year of 2000-2001.  As the savings accounts were used to calculate income for that year, they had to be used to calculate the relevant year at trial– December 2002

through November 2003.  Defendant cannot reasonably argue that the use of savings

accounts in the calculation is unfair.  As Long explained in his testimony, the use of

savings accounts may have even hurt Plaintiff.  (See Long tr. p.31 at lns. 13-18.)

Finally, Defendant contends that not only must Long "specify exactly" which

recommendations resulted in increased revenues, Long must also "specify the amount of

compensation owed as a result of that particular recommendation."  (Def. Supp'l. Br.,

p.3.)  Defendant cites the Third Circuit's opinion to substantiate the use of this imperative

language– "specify exactly".  See John M. Floyd & Associates, Inc., 2006 U.S. App.

LEXIS 28583, *10.  Significantly, the Third Circuit did not use that language in its

opinion.  Referring to Plaintiff's expert report at trial, the Third Circuit noted that it "is

not specific about exactly which of JMFA's recommendations the Bank implemented."

Id.  The Court then framed the issue for remand as "whether or the extent to which the

Bank implemented the specific recommendations that JMFA made to the Bank..."  Id.

Thus, Defendant's reading of the opinion misinterprets the directive by the Court. It also

contrasts with the unambiguous language of the Contract.  Indeed, the "Cost of the

Assignment" provision of the Contract states:

> The cost to your institution for the engagement will be one-third of the first
> year's quantified net increase in pre-tax earnings ... After the recommendations
> have been installed we will quantify the increased income and the bank agrees
> to pay monthly one-third of the quantified net increase in pre-tax earnings.

See Contract, p.2.

In accordance with the Third Circuit directive and the language of the Contract,

Long calculated the revenue stream germane to the recommendations adopted, and presented his findings to the jury.  He applied reliable accounting principles to Defendant's income statements, and his methodology satisfies the Court's standards.  See Fed. R. Evid. 702; Fed. R. Evid. 703; see also Kumho Tire Co., Ltd. v. Carmichael,  526 U.S.137, 148 (1999) (explaining the goal of Daubert is to ensure that "an expert ... employs in the courtroom the same intellectual rigor that characterizes the practice of an expert in the relevant field.").  Defendant could have proffered its own expert to rebut Long's calculations, but it did not.  Instead, Defendant relied on cross-examination to attack Long's methodology.  Defense counsel then made the choice to rest immediately following Plaintiff's case-in-chief.  In light of this record, this Court cannot say that "no reasonable jury could have found similarly" based on what was presented at trial.  See Fed. R. Civ. P.50(b); see also Powell v. J.T. Posey Co., 766 F.2d 131, 133-4 (3d Cir. 1985).  As a result, the Bank's renewed motion for judgment as a matter of law is denied.

### B.  Motion for New Trial or Remittitur in the Alternative
### 1.  Rule 59 Standards

The decision to grant or deny a new trial is almost exclusively within the province of the District Court.  See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980); see also Fed. R. Civ. P. 59.  The traditional bases for granting such a motion are: (1) where the verdict rendered is wholly against the weight of the evidence; (2) where the verdict rendered is excessive; (3) where improper motives have swayed the jury; and (4) where gross error has been committed by the jury. See Hayes v. Cha, 338 F.Supp.2d 470,

-13-

496 (D.N.J. 2004).  In addition, erroneous jury instructions serve as valid grounds for a new trial.  See Finch v. Hercules, Inc., 941 F.Supp. 1395, 1413 (D.Del. 1996).

With respect to damages, a jury award should not be disturbed if the record shows "sufficient evidence which, if accepted by the jury, would sustain the verdict."  W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 219 (3d Cir. 1984) (citing Hourston v. Harvlan, Inc., 457 F.2d 1105 (3d Cir.1972)).  Once made, that decision cannot be disturbed by the Court of Appeals "absent a manifest abuse of discretion." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 354 (3d Cir. 2001) (quoting Spence v. Bd. of Educ. of the Christina Sch. Dist., 806 F.2d 1198, 1200 (3d Cir. 1986)). The reason for this high standard is that "[t]he district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a *rationally based conclusion*." Spence, 806 F.2d at 1201 (emphasis added).

To be sure, purely speculative damages may not be recovered. See, e.g., American Air Filter Co., Inc. v. McNichol, 527 F.2d 1297, 1301 (3d Cir. 1975). The evidence must provide a fair basis upon which a jury can calculate the aggrieved party's damages.  Id. That being said, "[t]he quantum of proof required to establish the amount of damage is not as great as that required to establish the fact of damage."  American Air Filter Co., Inc. v. McNichol, 527 F.2d 1297, 1301 (3d Cir. 1975).  Thus, while verdicts based on "speculation or guesswork" must be overturned, see Bigelow v. RKO Radio Picture, 327 U.S. 251, 264 (1946), absolute precision has never been required.  Berg Chilling Systems,

Inc. v. Hull Corp., 369 F.3d 745, 764 (3d Cir. 2004) (citing Bigelow v. RKO Radio

Pictures Inc., 327 U.S. 251, 264 (1946)).

### 2.  Analysis

Defendant first argues that the verdict rendered was wholly against the weight of

the evidence because the record did not present a  "legally sufficient evidentiary basis for

a reasonable jury to conclude that a meeting of the minds existed between the parties."

(See Def. Supp.'l Br., pp.20-21.)  It, however, does not cite to the record to substantiate

this claim, nor does it make any argument other than the one stated directly above.  (Id. at

21.)  Instead, Defendant reiterates its claim that the Contract required specific,

implemented recommendations to be tied to specific and particular revenue increases.

(See Def. Supp.'l Br., p.21.)  The Court infers from this claim that Defendant's argument

is based on the theory that Defendant and Plaintiff never came to a common

understanding on the issue of damages.

The Court disagrees. The jury was presented with ample evidence as to whether

both parties objectively agreed to the terms of the Contract.  (See e.g. Esposito tr., p.12.)

Both parties agreed to the final verdict sheet and instructions which were submitted to the

jury.  In addition, a plain reading of the Contract entitles Plaintiff to one-third of

Defendant's increased revenues in the year following the plan's implementation.  (See

Contract, p.2)  Requiring Plaintiff to "specify exactly" how much revenue each specific

recommendation generated is a burden that the Contract does not contemplate.  (Id.)  In

any event, Defendant overlooks the fact that the jury was instructed, in pertinent part:

> the key questions for you are whether or the extent to which Defendant implemented specific recommendations Plaintiff made to Defendant, and whether these recommendations resulted in an increase in income for Defendant.

(Jury Instructions, p.25.)

In light of the evidence and the record before the Court, Defendant is not entitled to a new trial. Sufficient evidence was presented from which a reasonable jury could conclude that a meeting of the minds occurred.

Defendant's second argument is that the jury verdict was excessive in light of the evidence presented at trial. Defendant specifically contends that the verdict was speculative and ought to be reduced. (Def.'s Supp.'l Br., p.22.) Yet, the underlying verdict was not based on speculation guesswork; it finds extensive support in the record, and is based on the Cost of Assignment provision in the Contract. (See Contract, p.2.) Plaintiff's expert calculated the net income and the net losses for each month for the period December 2002 through November 2003. (See Long tr. p.14.) He then subtracted the net losses ($93,361.09) from the net revenue ($1,033,867.60), and attained the figure $940,506.51. (Id. at 15.) He then subtracted the base net revenue of 2000-2001 ($544,723.12) from $940,506.51, resulting in $395,783.39. (Id. at 16.) Consistent with the Cost of Assignment provision, Long took one-third of $395,783.39, which resulted in $131,927.78. (Id. at 17.) After subtracting the $25,000.00 retainer fee for Plaintiff, Long finally reached the figure of $106,927.78. (Id.) This is the precise amount the jury

-16-

awarded Plaintiff.

Long's expert testimony was based on reliable accounting procedures, as he utilized his knowledge and expertise to calculate the amount of damages specifically called for in the Contract.  (See Long tr., pp.8-18, p.21 at lns. 3-14, p.30 at lns. 19-25, p.31 at lns. 1-2.)  Furthermore, Plaintiff and Defendant agree that, barring an obvious cause such as Defendant's acquisition of another bank, any increase in revenue was otherwise attributable to the implementation of Plaintiff's recommendations.  (See Long tr., p.34, at lns. 5-11.)  Long candidly admits that the manner in which the Bank kept its books presented complications for his calculations.  However, he was able to apply reliable accounting procedures to resolve these problems.  (See Long tr., p.41, at lns. 19-25, and p.42, lns. 1-6.)  There is a distinct difference between the type of unfounded "speculation or guesswork" the Supreme Court has warned against, see Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264 (1946), and the type of financial accounting displayed to the jury in this case.

In any event, the issue of damages is ultimately an issue of fact, which the jury resolved in favor of Plaintiff.  It is not within this Court's discretion to disturb the jury verdict simply because some evidence was presented that could have supported a contrary verdict.  See Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir.1991) ("when the district court grants a motion for a new trial based on the weight of the evidence, the court has, to some extent at least, substituted its judgment of the facts and

-17-

credibility of the witnesses for that of the jury.").  The Third Circuit cautions that such action is a "denigration of the jury system."  Id.  Therefore, this ground does not afford relief for Defendant.

Finally, Defendant seeks a new trial on the basis that the jury instructions were erroneous. Defendant contends that the Court did not inform the jury "that it had to find more than the fact that Bank implemented an overdraft program–it had to quantify the increased earnings."  (Def.'s Supp.'l Br., p.22.)  The relevant instructions are as follows:

> However, the contract expressly provided that if Defendant implemented any of Plaintiff's recommendations, either as made by Plaintiff or as modified by Defendant, within 24 months of Plaintiff's engagement, Defendant owes Plaintiff compensation under the contract if implementing those recommendations increased Defendant's income.

(See Jury Instructions, p. 19.)

> [T]he key questions for you are whether or the extent to which Defendant implemented specific recommendations Plaintiff made to Defendant, and whether these recommendations resulted in an increase in income for Defendant."

(Id. at 25.)

These instructions are consistent with the terms of the Contract, and both parties agreed to the form at trial.  In addition, the testimony of Plaintiff's expert witness quantified the earnings due under the Contract using reliable accounting procedures. Accordingly, the jury was adequately instructed as to the determination of damages under the Contract. For the reasons expressed above, Defendant's motion for a new trial or remittitur in the alternative is denied.

-18-

C.  Plaintiff's Cross-Motion to Alter or Amend the Judgment

1.  Motion to Award Costs

Rule 54(d)(1) provides in pertinent part that "unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  This rule creates a "strong presumption" that costs are to be awarded to the prevailing party.  In re Paoli R.R. Yard PCB Litigation, 221 F.3d 449, 462 (3d Cir. 2000) (citing Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981)).  "To overcome the presumption favoring the prevailing party and to deny that party costs, a district court must 'support that determination with an explanation.'" Id. at 462 (quoting Samuel v. University of Pittsburgh, 538 F.2d 991, 999 (3d Cir.1976)). The burden is on the losing party to demonstrate that costs are inequitable under the particular circumstances of the case.  Id. at 463.

In its motion for costs, Plaintiff relies on the presumption cited above.  See Fed. R. Civ. P. 54.  Notwithstanding the untimely nature of Defendant's opposition,[4] Defendant has not demonstrated that costs are inequitable under the circumstances of this case. Defendant is not indigent, nor is there any alleged impropriety on behalf of the prevailing party.  See In re Paoli R.R. Yard PCB Litigation, 221 F.3d at 467 ("the district court must

---

[4]Plaintiff's motion to amend the judgment was returnable on May 19, 2008.  As such, Defendant had until May 5 to file his response to said motion.  (See this Court's May 5 Letter to the Parties) Defendant did not address the motion to amend until May 20.  (See Defendant's May 20 Letter to the Court.)  Due to Defendant's untimely response to the motion to amend, the motion is treated as unopposed.

generally award costs unless equity demands otherwise due to some impropriety on the part of the prevailing party during the course of the litigation."). In fact, Defendant's only objection is that Plaintiff has not specified exactly what costs are sought. (See Def.'s May 20 Letter to the Court, Dock. Entry 95.) The Local Rules require that the Bill of Costs shall be filed "[w]ithin 30 days *after the entry of a judgment allowing costs*." See L. Civ. R. 54.1(a) (emphasis added). Notably, the rule does not require the specificity demanded by the Bank at this stage. Costs are granted to Plaintiff because costs are usually awarded as a matter "of course", see Delaney v. Capone, 642 F.2d 57, 58 (3d Cir. 1981), and the motion itself is deemed unopposed.

## 2. Motion to Award Prejudgment Interest

The Supreme Court recognizes prejudgment interest as an element of the plaintiff's "complete compensation." Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989) (citation omitted). In a diversity action, state law governs the assignment of prejudgment interest. W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 219 (3d Cir. 1984) (citing Jarvis v. Johnson, 668 F.2d 740 (3d Cir.1982)). Both parties agree that New Jersey law governs the Contract, and in New Jersey, equitable principles govern the award of prejudgment interest. See W.A. Wright, Inc., 746 F.2d at 219 (citing Bak-A-Lum Corp. of America v. Alcoa Building Products, Inc., 351 A.2d 349 (N.J. 1976)). The New Jersey Supreme Court has long held that "prejudgment interest may be awarded on contract claims." Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063,

1070 (N.J. 1988).  The practical effect of an award of prejudgment interest is indemnification of the claimant for loss of funds that "would have been earned had payment not been delayed."  W.A. Wright, Inc., 746 F.2d at 219.

_____To begin, the jury found in favor of Plaintiff in this breach of contract claim, ultimately awarding $106,927.78.  That amount represents the fee owed Plaintiff during the relevant period of December 2002 through November 2003. Had Defendant not breached the Contract with Plaintiff, Plaintiff would have been paid its fee five years ago. (See Complaint, filed Apr. 1, 2003.)  During that time, Defendant undoubtedly had the use of funds which properly belonged to Plaintiff.  This reason has been cited as a sufficient justification for the award of prejudgment interest. See County of Essex v. First Union Nat. Bank, 891 A.2d 600, 609 (N.J. 2006).  In light of these facts, equity militates in Plaintiff's favor.

Plaintiff specifically asks for $12,081.35 in its request for prejudgment interest. That amount was determined in accordance with New Jersey Court Rule 4:42-11(a)(ii), which provides the "appropriate starting point" in calculating interest rates.  See DialAmerica Marketing Inc., v. Keyspan Energy Corp., 865 A.2d 728, 734 (N.J. Super. Ct. App. Div. 2005).  Defendant openly admits that "the interest calculation in JMFA's motion appears accurate and appropriate."  (See Def.'s May 20 Letter to the Court.) Therefore, Plaintiff is awarded prejudgment interest in the amount of $12,081.35.

### III.  CONCLUSION

For the reasons expressed above, the Defendant's renewed motion under Rule 50(b) for judgment as a matter of law is denied.  Defendant's motion for a new trial or remittitur under Rule 59 is also denied.  Finally, Plaintiff's cross-motion for an award of costs and prejudgment interest, pursuant to Rule 59(e), is granted.

/s/ Joseph H. Rodriguez_
JOSEPH H. RODRIGUEZ
United States District Judge

Dated: October 2, 2008